# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **REBEKAH D. SHAFFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CV-283-PJC** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

Claimant, Rebekah D. Shaffer ("Shaffer"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Shaffer's application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Shaffer appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Shaffer was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

## Claimant's Background

Shaffer was 44 years old at the time of the ALJ's decision on October 8, 2009. (R. 19, 112). At the hearing before the ALJ, Shaffer testified regarding her previous work from 1989-1994. (R. 23-24). In either 1993 or 1994, Shaffer worked as a housekeeper at a motel, but after three weeks of work she quit because a doctor told her to do only "light work." *Id.*

Shaffer testified to the extent of her daily activities. (R. 27-38). Shaffer stated that it took her two to three hours to wash her own dishes; however, before she developed back pain, washing dishes took her only one hour. (R. 25-26). Washing dishes took longer than it previously had because Shaffer had developed a pain in her leg, which required her to take breaks every five to ten minutes. *Id*. During her breaks, Shaffer had to sit or lie down. (R. 26). Shaffer was unable to lift a basket of clothes that weighed more than ten pounds because the pressure of the weight irritated and caused pain in her lower back. (R. 27).

Shaffer swept and mopped her own floors, but her daughter had to finish occasionally because those activities required Shaffer to twist her back, which Shaffer was unable to do because it irritated her nerves. (R. 26). Shaffer's two children helped her with her chores when she was unable to do them. (R. 27). Shaffer's daughter put the laundry in the washer and dryer while Shaffer sat and folded the clothes. *Id*. Shaffer could only sit and fold laundry for fifteen minutes before she had to get up and move around the room. *Id*.

Shaffer went to the grocery store occasionally, but she usually sent either her daughter or husband. *Id*. Shaffer tried to grocery shop two to three times every month. (R. 28). While grocery shopping, Shaffer used the shopping cart to support herself. *Id*. The shopping took two to three hours, while before the onset of her back pain it only took one hour. *Id*. While grocery shopping, Shaffer had to prop her leg up and rest for five to ten minutes every time her leg started to hurt, which was every fifteen to twenty minutes. (R. 28-29). Shaffer did not go grocery shopping alone. (R. 29-30). Shaffer brought her husband, daughter, or son with her because she needed help lifting heavy objects, such as dog food bags. *Id*.

Shaffer was able to bring her own groceries into her house provided she took breaks. (R. 30). However, Shaffer could not put away heavy items. *Id*. Shaffer could put items on shelves that were up high, but she was unable to put items on shelves that were closer to the ground because bending or squatting caused the muscles in her back to tighten and a disk to slip out of place. *Id*. When a disk in her back did slip out of place, she needed her husband to massage her back. *Id*.

Shaffer occasionally prepared her meals at home, but sometimes her daughter prepared her meals instead. *Id*. Shaffer often sat and peeled or cut the food while her daughter stood and cooked the food. (R. 32).

Shaffer could drive a car but chose to drive only on occasions when nobody else was available to drive. *Id*. On the occasions when Shaffer did drive, driving was difficult because it involved sitting for a long period of time and not moving the lower part of her body, which irritated the nerves in her back. (R. 32-33). Shaffer only drove to the grocery store, which was fifteen minutes from her home. *Id*. Shaffer testified that she could not drive for forty-five minutes straight. *Id*.

Shaffer testified that she lived in a house and used to do yard work. (R. 33-34). After she hurt her back, Shaffer's husband and son did the yard work. *Id*. For example, Shaffer used to use a push mower; however, since the onset of pain in her back, she no longer used the push mower because it involved her twisting her back. *Id*. Shaffer stated that recently she was unable to move the push mower at all. *Id*.

Shaffer said that she had a hard time sleeping. (R. 35). On an average night, she slept only two to three hours. *Id*. When Shaffer did sleep, her sleep was fragmented. *Id*. Shaffer did

not take naps during the day, unless she took her medication, which made her drowsy.  *Id*.

During a normal day, Shaffer washed the dishes, vacuumed the floor, and swept the rugs. *Id*.  Whatever tasks she did not complete, Shaffer's daughter finished when she returned home. *Id*.  Shaffer did not normally watch television or read during the day.  (R. 36).  Shaffer needed her husband's assistance when brushing her hair because she could not bend her head, and she needed his assistance when bathing because she had fallen before while attempting to get out of the bathtub.  *Id*.

Shaffer testified that her back pain was constant.  (R. 37).  She took prescription medications every day, and the medications made her drowsy.  *Id*.  Shaffer took Lortab to manage her pain, but her doctors told her to take Lortab only on the occasions when it was absolutely necessary.  *Id*.  When Shaffer took Lortab, she was not supposed to drive.  *Id*.  Shaffer testified that her doctors told her that she should not lift anything heavier than ten pounds and that she needed to sit with her legs up to take pressure off her spine.  (R. 38).

The administrative record shows that Shaffer was treated at The Spine Center on March 30, 2006, by Matthew Pollard, M.D.  (R. 286).  Shaffer's chief complaint was pain located in her lower back.  *Id*.  The pain in her lower back had started one week prior to her appointment.  *Id*. The pain was a sharp constant pain, which increased in intensity when she went from a seated position to a standing position or when she did any sort of physical activity.  *Id*.  Dr. Pollard assessed that Shaffer's pain stemmed from an acute exacerbation of chronic intermittent back pain.  (R. 287).  Dr. Pollard's treatment plan was for Shaffer to have an MRI to search for the cause of the pain and for Shaffer to continue to use her current medications.  *Id*.

An MRI March 31, 2006 revealed that Shaffer had a large focal disk herniation with a probable extruded fragment at the L4/L5 level as well as a small focal disk herniation at the L5/S1 level on the left. (R. 266). On June 15, 2006, Shaffer underwent a nerve root block L4 left side procedure at Augusta Medical Center because of the pain in her left leg. (R. 288).

On October 29, 2006, Shaffer was examined by Kevin T. Kollar, M.D., and Shaffer's chief complaint was aches in her legs and back. (R. 201). Dr. Kollar's diagnoses were myalgia[1] related to viral infection and left otitis media.[2] *Id*. Dr. Kollar's treatment plan was for Shaffer to take amoxicillin and ibuprofen and for Shaffer to continue to take her pain medication. *Id*.

On November 15, 2007, Shaffer was examined by D. Preston Grice, M.S., M.D. (R. 209). Dr. Grice diagnosed Shaffer with left lower limb radicular[3] pain and lumbosacral degenerative disk disease. *Id*. Dr. Grice recommended that Shaffer try Ultracet and oral corticosteroid, receive an interlaminar epidural steroid injection, and continue taking ibuprofen. *Id*.

On November 28, 2007, at Augusta Medical Center, Shaffer had a CT scan of her abdomen and pelvis, which revealed an unremarkable supine abdomen, and Randy Gallagher, D.O., diagnosed Shaffer with acute sigmoid diverticulitis.[4] (R. 198-99, 205). Dr. Gallagher's

---

[1]   Myalgia is "pain in a muscle or muscles." Dorland's Illustrated Medical Dictionary 1233 (31st ed. 1990) (hereafter "Dorland's").

[2]   Otitis media is "inflammation of the middle ear." Dorland's at 1372.

[3]   Radicular means "of or pertaining to a root." Dorland's at 1595.

[4]   Diverticulitis is "inflammation of a diverticulum ['a circumscribed pouch or sac of variable size occurring normally or created by herniation of the lining mucous membrane through a defect in the muscular coat of a tubular organ'] especially inflammation related to colonic diverticula, which may undergo perforation with abscess formation." Dorland's at 565.

treatment plan included prescribing Flagyl. *Id*.

On September 8, 2008, Shaffer was examined at the Orthopaedic Center. (R. 261). Shaffer's chief complaints were pain in her lower back, pain with her bowel movements, and pain with her menstrual cycles. *Id*. Shaffer also complained that her right hip was locking and catching. *Id*. Jeremy D. Thomas, D.O., the examining physician, diagnosed Shaffer with lumbar radiculopathy,[5] lumbago,[6] and evidence of herniated nucleus pulposus[7] ("HNP") at the L4-5 and L5-S1 levels. *Id*.

On December 4, 2008, Shaffer saw Henry J. Wittenberg, D.O., and her chief complaints were that she could not sleep at night, she cried a lot, and she was not eating. (R. 241-43). Dr. Wittenberg prescribed Estraidal and Citabpram. *Id*.

Shaffer had appointments with Larry Lane, D.O., on March 17, 2009, and March 30, 2009. (R. 275-78). On March 17, 2009, Shaffer's chief complaint was back pain. (R. 277). On March 30, 2009, Shaffer's chief complaint was pain in her chest and back. (R. 276). Dr. Lane diagnosed Shaffer as having myositis.[8] (R. 275). On April 6, 2009, Shaffer was examined by Dr. Lane, and Shaffer's chief complaint was pain in her side and chest. (R. 284). Dr. Lane diagnosed Shaffer with otitis media. (R. 285).

On August 13, 2009, Shaffer was examined at Generation Family Practice. (R. 271). Shaffer's chief complaints were that she was not sleeping well at night and that she was

---

[5]     Lumbar radiculopathy is a disease of the nerve roots located around the part of the back between the thorax and pelvis. Dorland's at 1092, 1595.

[6]     Lumbago is "pain in the lumbar regions." Dorland's at 1092.

[7]     Herniated nucleus pulposus is a "herniation of the intervertebral disk." Dorland's at 1320.

[8]     Myositis is "inflammation of a voluntary muscle." Dorland's at 1244.

depressed. *Id*. Shaffer stated that her depression caused her to stay in her bedroom most of the time. *Id*. Shaffer also complained that her back ached and that the pain level was ten-out-of-ten. *Id*. The examining physician's diagnoses were that Shaffer had major depression, anxiety, chronic pain, and a sleep disorder. (R. 272). The treatment plan included Prozac as well as other medications. *Id*.

On August 13, 2009, Dr. Lane completed a form entitled "Lumbar Spine Questionnaire." (R. 293-94). Dr. Lane's diagnosis was that Shaffer had disk herniation at the L4/L5 and L5/S1 levels. (R. 293). Dr. Lane's diagnosis was based in part on Shaffer's MRIs and a report by Dr. Pollard. *Id*. Dr. Lane identified that Shaffer had pain, fatigue, depression, anxiety, and sleep disturbance. *Id*. Dr. Lane noted that emotional factors contributed to the severity of Shaffer's symptoms and functional limitations and that her symptoms were severe enough to frequently interfere with her attention and concentration. *Id*. According to Dr. Lane, Shaffer's prognosis was poor. *Id*. Dr. Lane assessed that Shaffer could not walk a city block; sit or stand for more than five minutes at a time; nor sit or stand for two hours during an eight-hour work day. (R. 294-95). Dr. Lane noted that Shaffer could only work in a job that allowed her to get up and walk, with the assistance of a cane, for five minutes every five to ten minutes. (R. 295). Dr. Lane assessed that Shaffer could occasionally lift less than ten pounds but never more than ten pounds. (R. 296). According to Dr. Lane, Shaffer was unable to bend or twist at the waist, and her impairments were most likely to produce "bad days." *Id*.

On August 27, 2009, Dr. Lane completed a form entitled "Physical Exertion Limitations" and a second form that asked specific questions. (R. 299, 301). On the "Physical Exertion Limitations" form, Dr. Lane checked a box indicating that Shaffer could not do sedentary work

based on her ability to sit, lift, carry, stand, and walk. *Id.* Dr. Lane listed the x-rays taken on May 30, 2006, and the MRI dated March 31, 2006 as supporting these limitations. *Id.* On the second form, Dr. Lane checked a box indicating that Shaffer had a vertebrogenic disorder.[9] (R. 301). Dr. Lane further indicated that Shaffer had pain, muscle spasms, significant limitation of motion in the spine, and appropriate radicular distribution of significant motor loss and of muscle weakness. *Id.*

On November, 4, 2008, agency consultant Keith Patterson, D.O., performed an examination of Shaffer. (R. 212-17). Shaffer complained that she was limited in her ability to sit, stand, bend over, or walk because of her back pain. (R. 212). Dr. Patterson's impression was that Shaffer had chronic lower back pain and one or more HNPs, although he noted that this diagnosis could not be confirmed by the available data. (R. 213). Dr. Patterson commented that Shaffer was obese. *Id.* Dr. Patterson completed a Range of Joint Motion Evaluation Chart and indicated that Shaffer had full range of motion in her joints. (R. 214-15). Dr. Patterson circled plus signs indicating that Shaffer experienced pain in her lumbosacral spine when moving. (R. 216). Dr. Patterson circled minus signs indicating Shaffer did not experience pain in her cervical spine when moving. *Id.*

On November 19, 2008, agency nonexamining consultant Penny Aber, M.D., completed a Physical Residual Functional Capacity Assessment form. (R. 232-39). Dr. Aber indicated that Shaffer could do medium work. (R. 233-234). Dr. Aber noted that an MRI revealed a large focal disk herniation and a probable extruded fragment at the L4-L5 level on the left and a small focal

---

[9]     A vertebrogenic disorder is a disorder "arising in a vertebra or in the vertebral column." Dorland's at 2079.

disk herniation at the L5-S1 level on the left. (R. 234). Dr. Aber further noted that Shaffer underwent a left L4-L5 transforaminal epidural steroid injection in June 2007; however, this procedure did not produce significant results. *Id*. Dr. Aber cited an EMG/NCS of Shaffer's lumbosacral spine and lower limbs that revealed an increase in activity in the paraspinal musculature, which could suggest early nerve root irritation involving one of the left lower lumbar nerve roots. *Id*. Further, Dr. Aber noted that Shaffer had not seen her orthopedic surgeon since September 2006 and essentially had no further intervention. *Id*. Dr. Aber noted that Shaffer reported having been to the emergency room on several occasions and having been referred to pain management centers for further evaluation and potential treatment. *Id*. Dr. Aber found no postural, manipulative, visual, communicative, or environmental limitations. (R. 234-37). Dr. Luther Woodcock affirmed Dr. Aber's conclusions on February 4, 2009. (R. 259).

On November 11, 2008, agency nonexamining consultant Cynthia Kampschaefer, D.O., completed a Psychiatric Review Technique form. (R. 218-30). Dr. Kampschaefer found that Shaffer had no medically determinable impairment. (R. 218). Dr. Kampschaefer noted that Shaffer reported that she did not take any medication for depression and had never been hospitalized or received counseling. (R. 230). Dr. Kampschaefer found no evidence of depression, although she noted that Shaffer claimed that her back pain caused her to be depressed. *Id*. Dr. Kampschaefer noted that Shaffer took care of her own personal care needs, drove, shopped, and attended church. *Id*.

On February, 3, 2009, agency nonexamining consultant Tom Shadid, Ph.D., completed a Case Analysis form. (R. 244). The form appears to indicate that Dr. Shadid could not confirm the previous form completed by Dr. Kampschaefer because on reconsideration Shaffer claimed to

have seen a counselor, Dr. Wittenberg, and the request for medical evidence to Dr. Wittenberg had been unsuccessful. *Id.* Under these circumstances, Dr. Shadid stated a need for more information regarding the extent of the counseling and the activities of daily living of Shaffer before he could complete the form. *Id.* It appears that Dr. Shadid's concerns were addressed, because the record contains a Psychiatric Review Technique form completed by him and dated February 3, 2009 stating that the assessment was "curtailed development." (R. 245-68). In the consultant's notes portion of the form, Dr. Shadid wrote that Shaffer had no treatment history on initial consideration, but on reconsideration reported counseling. (R. 257). The counselor did not respond to a request for medical evidence, but Shaffer stated that she had seen him only once and did not intend to see him again. *Id.* After reviewing Shaffer's stated activities of daily living, Dr. Shadid concluded that "[t]here does not appear to be present a clinically significant mental impairment that needs further development." *Id.*

## Procedural History

On July 30, 2008, Shaffer filed an application for SSI benefits under Title XVI, 42 U.S.C. § 401 *et seq.* (R. 112-19). Shaffer's application for benefits was denied in its entirety initially and on reconsideration. (R. 70-73, 76-78). A hearing before ALJ Deborah L. Rose was held October 8, 2009, in Tulsa, Oklahoma. (R. 19-42). By decision dated November 4, 2009, the ALJ found that Shaffer was not disabled at any time through the date of the decision. (R. 9-18). On March 12, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[10]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

---

[10] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.*, (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

At Step One, the ALJ determined that Shaffer had not engaged in substantial gainful activity since the application date of July 22, 2008. (R. 11). At Step Two, the ALJ found that Shaffer had severe impairments of degenerative disk disease of the lumbar spine and obesity. *Id.* The ALJ considered Shaffer's alleged impairment of depression. (R. 11-12). The ALJ determined that the medical evidence failed to establish the presence of a medically determinable mental impairment of depression. *Id.* The ALJ noted that the claimant did not allege diverticulitis as an impairment, but she concluded that Shaffer's diverticulitis was non-severe. (R. 12). At Step Three, the ALJ found that Shaffer's impairments did not meet a Listing. *Id.*

The ALJ found that Shaffer had the RFC to perform the full range of light work as defined by 20 C.F.R. § 416.967(a),[11] but she was limited to simple routine tasks. (R. 13). At Step Four, the ALJ found Shaffer had no past relevant work. (R. 17). At Step Five, the ALJ

---

[11]     "Light work involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. If a claimant can do light work, it is also determined that [she] can do sedentary work, unless there are additional factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(a)

used the "Grids"[12] and found that there were jobs in the national economy that Shaffer could perform.  (R. 17-18).  Thus, the ALJ concluded that Shaffer was not disabled under the Social Security Act at any time since the application date of July 22, 2008.  (R. 18).

## Review

Before discussing the merits of Shaffer's appeal, the Court notes the requirements of a claimant in articulating her arguments before this Court.  These requirements were discussed by the majority in the Tenth Circuit case of *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009).  In *Wall*, the court discussed an argument related to the claimant's RFC.  *Id.*  The Tenth Circuit noted that at the district court level, the claimant had merely alleged, several times, that the ALJ had failed to consider the objective medical evidence.  *Id.*  The appellate court cited to the opinion of the district court judge, stating that "[b]ecause Claimant's counsel failed to present any developed argumentation in regard to Claimant's physical impairments, the district court obviously viewed this issue as waived."  *Id.*  The Tenth Circuit called the claimant's argument at the district court "perfunctory," and said that it had deprived that court of the opportunity to analyze and rule on that issue.  *Id.* (quotation and citation omitted).  *See also Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (Tenth Circuit's review is limited to issues the claimant preserved at the district court level and adequately presented on appeal).

With this as a framework, the undersigned acknowledges that Shaffer has, at least in a perfunctory manner, raised four issues on appeal: (1) the ALJ failed to properly consider all of the claimant's medical evidence and the combined effects of her impairments; (2) the ALJ erred

---

[12]    The Grids are the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.

in her analysis and credibility findings regarding the claimant's subjective complaints of pain; (3) the ALJ erred in finding that the claimant retained the RFC to perform light work; and (4) the ALJ erred in disregarding the opinion and findings of the claimant's primary treating physician, Dr. Lane.

Regarding the issues raised by Shaffer, the undersigned finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Therefore, the ALJ's decision is affirmed.

**Medical Evidence and Combined Effects of Impairments**

Shaffer's first point combined alleged errors of failing to consider medical evidence and failing to consider the combined effects of her impairments. The portion of the Opening Brief that apparently addresses these points did not develop these two stated points of argument. Opening Brief, Dkt. #15, pp. 5-6. There were general statements, such as that the ALJ disregarded Shaffer's "testimony regarding pain, discomfort, fatigue, difficulty sleeping and side effects from medications." This was paired with the general principle that the ALJ must consider the claimant's effects in combination, but there was no other development of this argument. There were no specific citations to the record. The Court finds that this is not a developed argument that allows for meaningful review. *Wall*, 561 F.3d at 1066.

At one point, Shaffer stated that the ALJ dismissed her mental impairments as non-severe "without procuring a consultative psychological evaluation," but she did not develop this argument beyond this one sentence. Any argument regarding development of the record was waived due to failure to present it in a fashion that would allow this Court to give meaningful review and analysis. *Id.* Additionally Shaffer was represented by counsel at the hearing before

the ALJ, and there was no request made at that time or later for a consultative psychological evaluation prior to her appeal to this Court. (R. 19-42). A claimant may not rest on the record and then fault the ALJ for not performing an exhaustive investigation. *Maes* v. *Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). The Court finds that this issue was waived.

Moreover, even if the Court found that Shaffer in her first point on appeal made a developed argument, the ALJ's decision appears to be quite thorough and to consider all of the relevant evidence. In making a disability determination, the ALJ must consider all the impairments documented in the record throughout the disability process. *Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (The ALJ must consider the cumulative effects of the claimant's impairments); 20 C.F.R. § 416.923.

At Step Two, the ALJ found that Shaffer suffered from two severe impairments, degenerative disk disease of the lumbar spine and obesity; therefore, no reversible error occurred at this step.[13] The ALJ discussed all of the evidence that possibly indicated a mental impairment, and she concluded that no medically determinable mental impairment was established. (R. 11-12). At Step Three, the ALJ considered Listing 1.04 for back disorders and obesity.[14] (R. 12). The ALJ discussed, with specificity, the Listings she considered, the relevant evidence, including

---

[13]    It is well-settled law in this circuit that any error at Step Two is harmless so long as the ALJ finds at least one condition to be severe, so that the five-step sequential evaluation continues. *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007); *Carpenter*, 537 F.3d at 1266 (any error at Step Two was harmless when ALJ properly proceeded to next step of evaluation sequence).

[14]    Shaffer's counsel stated during the hearing that Shaffer's impairments did not meet a listing. (R. 22-23). This also constituted a waiver. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (ALJ "should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case . . . .").

the effects Shaffer's obesity had on her spine, and her reasons for not reaching a finding of disability at this step. (R. 12-13). This thorough review meets both the case law and regulatory requirements. *Clifton v. Chater*, 79 F.3d 1007, 1008-09 (10th Cir. 1996) (the ALJ must identify the relevant Listings and discuss reasons for determining claimant was not disabled); 20 C.F.R. § 416.912 (the ALJ must base the decision on the evidence offered at the hearing or otherwise included in the record).

At Step Four, the ALJ determined that Shaffer had the RFC to perform light work, but she was limited to simple routine tasks. (R. 13). In assessing the claimant's RFC the ALJ is "obligated to consider all limitations, severe and non-severe, during the RFC determination." *Groberg v. Astrue,* 2011 WL 538870 (10th Cir.) (unpublished) (emphasis omitted); *see also* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your [RFC]"). In the instant case, the ALJ considered Shaffer's severe impairments of degenerative disk disease of lumbar spine and obesity. (R. 14-17). She reviewed Shaffer's testimony regarding her pain, discomfort, fatigue, difficulty sleeping, and side effects from her medications. (R. 14). She gave a detailed analysis for why she did not find Shaffer's complaints of disabling pain to be credible. (R. 16-17).

Thus, while Shaffer asserts that the ALJ disregarded her testimony regarding her pain and other medical evidence, a review of the ALJ's decision reveals that the ALJ included a thorough discussion of Shaffer's testimony and the medical evidence at all steps of the disability process. Thus, the ALJ's decision was supported by substantial evidence, and the proper legal standards were applied.

**Credibility Assessment**

Shaffer asserts that the ALJ erred in her credibility assessment by rejecting Shaffer's claim of disabling pain. As was true of Shaffer's first point on appeal, the Court finds that her second argument is not sufficiently developed to allow meaningful review. Shaffer's entire argument is that she established pain through her testimony and the objective medical evidence. While she protests that "[t]he ALJ neglected to properly consider [Shaffer's] subjective complaints of pain in blatant violation of Tenth Circuit caselaw," Shaffer again fails to cite cases for anything other than basic principles. Opening Brief, Dkt. #15, pp. 6-7. The Court finds it appropriate to cite to the Tenth Circuit's statement that "[a] party's failure to cite any authority 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Flores v. Astrue*, 246 Fed. Appx. 540, 543 (10th Cir. 2007) (unpublished), *quoting Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970). Shaffer's credibility argument, as with her first point of error, is not a developed argument that allows for meaningful review. *Wall*, 561 F.3d at 1066.

Were the Court to consider Shaffer's vague arguments regarding credibility, the Court would find that the ALJ's credibility assessment was supported by substantial evidence and that the correct legal standards were applied. Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations].
> Not only does an ALJ see far more social security cases than do appellate judges,
> [the ALJ] is uniquely able to observe the demeanor and gauge the physical
> abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002). In evaluating credibility, an ALJ must

give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. The Tenth Circuit has an established framework for analyzing the credibility of testimony regarding disabling pain:

> (1) whether the Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).

In the instant case, the ALJ determined that Shaffer's impairments were supported by objective medical evidence and that her allegations of pain were connected to that impairment. (R. 14). Thus, the only question the ALJ needed to assess was the third prong regarding whether Shaffer's pain was disabling. The ALJ considered the seven factors from SSR 96-7p.[15] (R. 16-17). The ALJ noted that Shaffer testified that her back pain radiated down her legs and that her pain was aggravated when she bent over or twisted her back. (R. 14-17). However, the ALJ further noted that Shaffer had generally not received the type of treatment one would expect for a person suffering from total disability. (R. 17). The ALJ noted that Shaffer underwent a L4/L5 transforaminal epidural injection and that Shaffer saw a chiropractor briefly in 2003 or 2004;

---

[15] The seven factors are: "(1) the individuals daily activities; (2) the location, duration, frequency, and intensity of the individuals pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (noting that an ALJ should consider these factors).

however, the ALJ also noted that Shaffer had not tried any other alternative therapies. (R. 15). Lastly, the ALJ noted that Shaffer testified that her daily activities included doing the dishes, "little" vacuuming, sweeping, folding the laundry, preparing meals with the assistance of her daughter, grocery shopping, and driving. (R. 16). The undersigned is mindful that "sporadic performance [of household tasks] does not establish that a person is capable of engaging substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987). However, in the instant case, the ALJ's findings as to credibility were closely and affirmatively linked to substantial evidence. The undersigned affirms the ALJ's decision as to credibility.

**RFC Determination**

Shaffer's third argument was that the Commissioner erred in finding that the claimant retained the RFC to perform light work. The Court again finds that this argument is not sufficiently developed to allow meaningful review for the same reasons given for the previous two arguments. The portion of Shaffer's brief that appears to address this third point repeated much of the discussion of the first two points, including Shaffer's statement that the ALJ "completely disregarded" Shaffer's testimony and the opinions of treating physicians. Opening Brief, Dkt. #15, p. 7. Because Shaffer failed to develop her argument regarding the ALJ's RFC determination, the Court finds that it has been waived because it does not allow for meaningful review. *Wall*, 561 F.3d at 1066.

Again, even if the Court found that Shaffer had sufficiently articulated issues regarding the ALJ's RFC determination, those issues would not be persuasive, based on Shaffer's vague arguments before this Court. Shaffer stated general principles, recited accurately that the ALJ found severe impairments at Step Two and found no past relevant work at Step Four, and then

stated: "Yet, the ALJ determined that [Shaffer] was able to perform light work." *Id.* Findings of severe impairments at Step Two and no past relevant work at Step Four in no way prohibit a finding that a claimant still has the RFC to perform light work. Any point that Shaffer was trying to make in this portion of her brief is not availing.

As stated above, Shaffer repeated her argument that the ALJ did not consider all of the evidence, including Shaffer's testimony regarding the disabling nature of her pain. The ALJ was thorough in her discussion of the evidence and in her explanation of why she found Shaffer's allegations of disabling pain to be less than fully credible. Shaffer's vague allegation in this regard does not state a persuasive point.

Next, Shaffer raised the issue of her mental impairments. *Id.* at 8. She made many vague statements regarding the nature of mental impairments, without citation to any authority. *Id.* She then included a citation to *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996) for the proposition that care must be taken to determine if the claimant's mental impairment is compatible with the performance of specific work duties. The quoted portion of *Winfrey* discussed possible errors of the ALJ at Step Four. *Id.* Shaffer in her brief did not articulate any Step Four or Step Five arguments, apart from this one quotation. To the extent that Shaffer was attempting to raise a Step Five issue, this issue was waived due to failure to present it in a fashion that would allow this Court to give meaningful review and analysis. *Wall*, 561 F.3d at 1066.

Shaffer repeated her argument regarding failure to develop the record by obtaining a consultative mental examination. Opening Brief, Dkt. #15, p. 8. She again made this argument in a perfunctory manner, with no citation to the record or to authority. The Court's earlier analysis of Shaffer's waiver of arguments relating to a consultative mental examination remains applicable here.

In the absence of any developed or persuasive arguments, the undersigned concludes that the ALJ's RFC determination was supported by substantial evidence and that the correct legal standards were applied. *Krauser,* 638 F.3d at 1326 (Tenth Circuit's review is limited to issues the claimant preserved at the district court level and adequately presented on appeal).

**Opinion of Dr. Lane**

Shaffer's fourth and final argument was that the Commissioner erred in disregarding the opinion and findings of Shaffer's treating physician, Dr. Lane. Opening Brief, Dkt. #15, pp. 8-9. This argument was again not well developed, with no citations to the record other than one to the ALJ's decision, and with only one case cited for a general proposition. However, it is clear that Shaffer's argument is that the ALJ discounted the opinion evidence of Dr. Lane for insufficient reasons. Considering the arguments raised by Shaffer, the Court finds that the ALJ's evaluation that Dr. Lane's opinion evidence should not be given any weight is supported by substantial evidence.

A treating physician's medical opinion on the nature and severity of the claimant's impairments may be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). However, "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Id; see also* 20 C.F.R. § 416.927(d)(2).

In the instant case, the ALJ reviewed the "Lumbar Spine Questionnaire" form filled out by Dr. Lane in some detail in her decision. (R. 16). After her summary, she stated that she did

not give Dr. Lane's medical opinions any weight because they were not supported by any findings in his report or in other medical evidence of record. *Id.*

In her brief, Shaffer repeatedly stated that the ALJ erred in disregarding Dr. Lane's opinions. Opening Brief, Dkt. #15, pp. 8-9. She stated that Dr. Lane's conclusions were "perfectly consistent with the reports of other treating physicians contained in the record," but she offered no examples, and she gave no citations to the record. The ALJ stated that she rejected Dr. Lane's opinion evidence because it was not supported by findings in his report or by any medical evidence of record. The undersigned finds that these reasons for rejecting Dr. Lane's report are legally adequate and are supported by substantial evidence. *See White,* 287 F.3d at 907-08 (Tenth Circuit would not reweigh evidence when the ALJ's discounting of treating physician's opinion was based on legitimate factors such as lack of objective medical evidence supporting treating physician's opinion, inconsistencies in the treating physician's records, and the relatively brief length of the doctor-patient relationship); *Oldham*, 509 F.3d at 1258 (no error where ALJ "provided good reasons in his decision for the weight he gave to the treating sources' opinions").

Here, Shaffer had a limited record of medical treatment for the medical impairments that Dr. Lane described in what the ALJ called "extreme" functional limitations. Shaffer's March 31, 2006 MRI, as Dr. Lane noted in his report, did show a disk herniation at the L4/L5 level. (R. 266). After a nerve root block in June 2006, Shaffer apparently did not seek treatment again until October 2006, at which time the doctor believed her pain was viral in nature. (R. 201). The medical record then has a one-year gap, with Shaffer being seen in November 2007. (R. 209). Shaffer then saw another doctor in September 2008. (R. 261). None of these records of five office visits in the more than two-year period from March 2006 through September 2008 support

any of the extreme functional limitations Dr. Lane expressed in the forms he completed in August 2009.

Dr. Lane saw Shaffer three times in March and April 2009, and those office visits again do not support the functional limitations Dr. Lane assessed. (R. 275-78, 284-85). At the March 17 visit, Shaffer's complaints involved breathing difficulties as well as gynecological issues. (R. 277-78). The visit had very little to do with the impairments that she alleged were disabling, and there was no musculoskeletal examination and therefore no findings relating to Shaffer's back. *Id.* At the March 30 visit, back pain was listed as one of Shaffer's chief complaints, but the only examination finding was that her thoracic spine was tender to palpation. (R. 275-76). It appears that she may have been prescribed osteopathic manipulation treatment for her thoracic spine. *Id.* On April 6, 2009, the office visit was to follow up on the previous visits, but Shaffer described "pain in side and chest" along with shortness of breath and other symptoms. (R. 284-85). The examination notes indicate that there was no musculoskeletal examination at that time, and it appears that Claritin was prescribed, giving the reviewer some indication that the physician may have felt Shaffer's symptoms were due to an allergy issue. Therefore, none of the three visits Shaffer made to Dr. Lane's office prior to his completion of the disability forms in August 2009 give an indication that Shaffer had severe functional limitations due to the disk issues indicated in her lumbar spine by the 2006 MRI. This is substantial evidence supporting the ALJ's reason for rejecting the functional limitation opinion evidence that Dr. Lane put forward in the two forms that he completed. The ALJ's statement that there was no medical evidence of record that supported Dr. Lane's findings is correct and is supported by substantial evidence, and therefore

this portion of the ALJ's decision is affirmed.

The undersigned concludes that the ALJ's decision was supported by substantial evidence and the correct legal standard was applied; therefore, the Court affirms the decision of the ALJ.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 3rd day of August, 2011.

Paul J. Cleary
United States Magistrate Judge